No. 11,911.

THE STATE VS. SAMUEL SALTER.

Sections 784 and 785 of the Revised Statutes declares that whoever shall commit the crime of wilful murder on conviction thereof shall suffer death. There shall be no crime known under the name of murder in the second degree, but

on trial for murder the jury may find the person guilty of manslaughter. In the consideration of a homicide the Grand Jury is not forced to enter into the particulars of the killing and primarily charge manslaughter, but is authorized to charge murder under Sec. 1038 of the Revised Statutes, leaving the result of the charge to be determined by the facts elicited by the testimony.

The request of accused to have the court charge the jury as to the logical character of the indictment found against him was properly overruled as a matter not to be submitted to it.

If a party with intent to kill or murder a particular person illegally and feloniously shoots at him (his will being directed exclusively to that end), but he fails to accomplish his purpose and unintentionally kills another person he has no reason to complain if under an indictment for murder he is found guilty of manslaughter, because he may not have had reason to expect that his shot would strike a third person.

The Supreme Court can not be asked to reverse the verdict of a jury, because the court below failed to charge the jury on the law of self-defence when it has nothing before it to show that under the evidence in the case such a charge would have been relevant and the court was not asked to charge on that subject.

Counsel who fails to ask the court to charge the jury on the subject of self-defence, because, in an unofficial conversation with the judge the latter had stated to him that the plea of self-defence admitted the killing, can not, after the trial, seek a reversal on the ground that he had been forced by this statement to waive his right of going before the jury on that issue. He should not have acquiesced in the matter, but have insisted upon his legal right to a special charge and availed himself by exception and bill of any error made by the court in modifying or qualifying his requested charge.

The Supreme Court is not authorized, in criminal cases, to pass upon the issues involved on a mere statement as to occurrences which took place on the trial when the statement was made after the occurrences took place and without exceptions having been taken and bills reserved, even though the District Judge may sign the same.

APPEAL from the Ninth Judicial District Court for the Parish of Sabine. *Hall, J.*

*M. J. Cunningham*, Attorney General, and *J. B. Lee*, District Attorney, for Plaintiff, Appellee.

*Scarborough & Carver* for Defendant, Appellant.

Argued and submitted November 23, 1895.
Opinion handed down December 2, 1895.
Rehearing refused (reasons assigned) February 10, 1896.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant, indicted for having wilfully, feloniously and of his malice aforethought, killed and murdered one Mark Anthony, was tried, convicted of manslaughter and sentenced to eight years in the penitentiary. He appealed.

Defendant's counsel in his brief says " that the only matter presented to this court is that presented in bill of exception No. 3."

The bill commences with the statement that "the charge of the court being in writing it was annexed to the bill as a part thereof, and the prisoner reserved his bill of exception to the said charge." It then proceeds to say: "The accused excepts to the charge for the reason that the same did not contain the law of self-defence, which prisoner's counsel was *forced to waive* under the statement of the court that, if requested to charge the law of self-defence, the court would be compelled to charge the jury ' that the plea of self-defence admitted the killing by the accused.' " The prisoner's counsel was by the court shown the decision of the Supreme Court, in 36 An. 148, State vs. Watson, as being the authority which was binding on the lower courts and which the court was bound to follow. Prisoner's counsel urged that that doctrine could not apply and should not be so charged in an accidental killing, where there was a dispute as to which of two different shots claimed to have been fired by two different persons firing at each other (had caused the killing).

Prisoner's counsel had prepared special charge No. 15, which was shown to the court, which counsel had designed having the court give, but on being informed by the court that if the law of self-defence was asked, the court would be bound under said decision to charge "that the plea of self-defence, when set up by an accused, admits the killing." Prisoner's counsel being compelled to either have the law of self-defence given by the court as laid down in 36 An. 148, and special charge No. 15 refused, or have it omitted from the charge, was compelled to not request the charge, and so announced to the court; and in the argument of the case before the jury did not claim or discuss the law of self-defence.

The court's statement relative to this matter was as follows:

" The court took no action except to ask counsel whether he would urge the plea of self-defence, and on his answering ' yes,' the judge remarked that the plea of self-defence admits the killing, and handed

counsel the case in the 36 An. 148. Counsel read it and made no reply, but in his argument complained that he was cut off from urging the plea of self-defence because, if he urged it, the court would charge that the plea of self-defence admits the killing, and disclaimed the plea of self-defence on this ground, and urged only that defendant did not kill deceased; that the evidence did not show whether he or Tom Anthony killed him. The court then did not give the law of self-defence, as the charge shows.

"Counsel submitted fifteen special charges: No. 9 was canceled; No. 15 was withdrawn; Nos. 8 and 14 were given; and the others refused. When the charge was finished, the court remarked to counsel that he had given Nos. 8 and 14 and refused the others, and counsel replied he would prepare the bill of exceptions. The court understood counsel to mean his bill of exceptions to the refusal of his remaining eleven special charges, and had no intimation that any bill of this kind was reserved until it was presented for signature. If counsel had wanted the law of self-defence given, without the statement that the plea of self-defence admits the killing, he should have asked for it, and, if not given, have excepted to its refusal."

We find at the end of this statement of the court the following:

"To all of which the prisoner by counsel excepts and reserves this bill of exceptions, as well as the refusal of the court to give the special charges from 1 to 15, 8 and 14 excepted, which were given by the court as shown by the special charges and made part of the bill of exceptions with the written charge which was given."

To this the court adds:

"The special charges refused were not good law, and the law on the subject of the malice necessary to constitute murder was fully explained in the charge."

In the brief filed on behalf of the defendant counsel say:

"The consideration of this bill might be further divided into two parts, which we will do, and discuss, *first*, the action of the court in not giving the special charge; second, the action of the court in not giving a correct charge in the written charge, all of which are annexed to and made part of the bill.

"The special charges are directed to presenting the objection to the mode of procedure, and this objection turns on the act of the District Attorney in charging one crime and having a conviction sustained on proof of another. To present the exact question, we sug-

gest the entire question turns on whether ' in a case where an intention exists to do some specific act, and in attempting to do the specific act, an entirely different and distinct and unintended injury is inflicted on another person, can the prosecution make one lumping charge and join the intention to the unintended act and make one compound crime?'

"In this case the shot fired at Tom Antony did accidentally kill Mark Antony, a cousin of the party fired at.

"The indictment charges that the shot was fired at Mark Antony and with murderous intent; the effort is to sustain it by proof that the malice did exist toward Tom Antony, and this malice can be proven and made to support an indictment for accidentally killing Mark Antony, a person toward whom no intent to do injury is conceded to exist. The question is in such a case, can the two offences, the one attempted but not consummated, be lumped with the injury accidentally committed, for which there existed no intention, and under allegations such as in this case which give no intimation of such, be sustained?

"In some States such can be done, but it is because in such States special statutes have been enacted as authorize such. No such has been passed in our State, and unless such a proceeding has the sanction of the common law, it is bad. So we should first determine what the common law rule is on the subject. In doing which we find where "A" shoots at "B" and unintentionally wounds "C," he must be separately indicted and prosecuted for the two separate offences. Wharton C. P. and P., Sec. 486.

"Where an intention exists to do a criminal act, and an unintended crime is committed, the unintended act borrows the criminality of the intended one. If, however, in the specific attempt to commit some specific crime, by accident some unintended act is committed, the proper course is to indict for the attempted act in one indictment, and for the unintended crime in another." Wharton's Criminal Law, Sec. 120, No. 2.

The indictment in this case charges that "Samuel Salter, of the parish of Sabine, on the 15th day of January, in the year of our Lord one thousand eight hundred and ninety-five, at and in the parish, district and State aforesaid, did wilfully, feloniously, and of his malice aforethought, kill and murder one Mark Antony, in the peace of God and the State then and there being."

There is in the indictment no allusion whatever to Tom Antony; it nowhere appears that the crime, with which the accused was charged, had any connection with Tom Antony; that the accused shot at him at all, either with intent to kill, or with intent to murder without malice or with malice.    We know nothing of Tom Antony except in the recitals of defendant's bill of exceptions.   The circumstances under which Mark Antony was killed by Samuel Salter are not stated; they were left to be brought out by the evidence.   We do not know what the testimony before the grand jury was.   It reached the conclusion from that evidence that Salter had killed Mark Antony under circumstances such as, in its opinion, to warrant and justify it in charging that he had wilfully, feloniously, and of his malice aforethought, killed and murdered him.   If such was the opinion of the grand jury it was authorized to present the identical bill which it did, which would stand or fall entirely or partially on the trial as the charge was sustained, or not sustained in law and fact.

The grand jury was not forced to enter into the particulars of the killing and primarily charge manslaughter, but was authorized to charge murder, leaving the result of the charge to be determined by the facts elicited by the testimony.   The fact that it should be made to appear on the trial that the crime, which should have been charged in the indictment, was manslaughter instead of wilful murder, would not warrant an accused in asking to have the verdict and sentence set aside because rendered under a heavier charge.

Our law says "that whoever shall commit the crime of wilful murder, on conviction thereof shall suffer death" (Sec. 784), and that "there shall be no crime known under the name of murder in the second degree; but on trial for murder the jury may find the person guilty of manslaughter."   Sec. 785.

As a verdict of manslaughter is permissible under an indictment for murder, framed according to our statute, the State, under an indictment charging murder, is entitled to introduce any evidence which would be admissible under an indictment specifically charging manslaughter.

On the other hand, the accused, though charged with murder, is permitted to introduce any evidence going to show that he is guilty of neither that crime, manslaughter, nor any other crime of which he could be found guilty under the various verdicts which a jury is authorized to return under an indictment for murder.

In the present case the jury returned a verdict of manslaughter. There is no claim by the accused that he was hampered in the introduction of his eivdence by the character of the indictment. He doe, not show how he has been prejudiced in any way by the form of the indictment, or how, through it, the State has "succeeded in charging one crime and having a conviction sustained on proof of another."

The recitals of the indictment are sufficient to make a verdict of manslaughter responsive to them, and the form followed (which is a statutory form) was adopted precisely to meet the possibility and contingency of such a verdict.

Counsel has not discussed in his brief the different special charges which the court refused to give to the jury. Though separately numbered, they seem to have been presented at one time as a single whole, and so rejected.

The bill of exceptions does not deal with these charges separately, as it should have done, in order to reach any particular special charge which was erroneously refused. As we find several of these charges underscored in the transcript, we presume that it was to the refusal to give those particular charges that complaint is made.

These special charges were Nos. 2 and 12.

No. 2 is as follows:

"I charge you that where one act results in two separate injuries, as the killing of two persons, that the party must be separately indicted for the commission of the two separate offences."

No. 12. "Where there is a general intent to do evil, of which evil the wrong complained of may be considered as forming a part and being reasonably covered by such general evil intent, the party may be convicted of any particular wrong on such general malice, as where a party deliberately fires into a crowd, not knowing any person in the crowd, he may be convicted of the killing of any person in the crowd, whether or not there existed any specific intention to kill that particular person. If, however, you believe from the evidence that the accused's will was directed exclusively to a particular end in which he failed, and that the act done by him was unintended in any sense, then the more logical course is to indict him for the attempt to do the unperformed act and for negligence in the performed act."

We are not informed by the record whether the shooting by Salter

resulted in two separate injuries, or the killing of two persons, and, if so, whether or not different indictments have been found. We know simply that he is charged with having killed Mark Anthony wilfully, feloniously and of his malice aforethought. Whether he should have been "indicted" for shooting at Thomas Anthony, either with the intent to kill or with intent to murder, is a fact which has no legal bearing in this case, and the court properly refused to give any charge on that subject.

In the twelfth special charge, which accused requested should be given, the court was asked to charge the jury in respect to the logical character of the indictment found by the grand jury, a matter not submitted to the trial jury at all.

If there were legal objections to the indictment, they should have been urged in a different manner and form. Contained in the body of this charge, however, is announced a proposition, which the court declares was not law. Counsel's proposition substantially was that if Salter in illegally and feloniously shooting at Thomas Anthony with the intent to kill or murder him, failed to accomplish his purpose, but did shoot and kill Mark Anthony unintentionally, his will having been directed exclusively to the particular end he had in view, of killing or murdering Thomas Anthony, that the only crime for which he could be indicted, so far as Mark Anthony was concerned, was for having in shooting at Thomas Anthony, with intent to kill or murder him, have done so, so negligently as to shoot and kill Mark Anthony accidentally.

Such a proposition as that is totally untenable.

If the killing in this case was done under the circumstances which this charge assumes, we think the defendant has no reason to complain if under an indictment framed as the present one was he was found guilty of manslaughter. The fact that the accused may not have reason to expect that his shot would strike a third person would not make any difference in the legal situation.

Accused complains that the court did not instruct the jury as to the law of self-defence. We know nothing of the evidence in the case and *can not tell whether a charge on that subject would have been relevant or not* under the evidence. The accused did not ask the court to charge on that subject; the court was not placed in a position to refuse, but on the contrary, it appears by the bill of exception that a special charge in reference to that point, which the accused

had prepared, was withdrawn by him. Counsel says it was not withdrawn voluntarily; that he was compelled to withdraw it in view of the position of the court announced to him "that if an instruction on the law of self-defence were asked it would be forced also to charge that the plea of self-defence was an admission of the killing." Counsel in answer to a question from the bench on the argument as to whether the conversation between the judge and himself relatively to the effect of setting up self-defence upon the fact of the killing was extra-judicial or announced in open court, stated that the conversation was a private conversation between them. Counsel should not have acquiesced in the correctness of the judge's position, but should have put its correctness to the test and forced a ruling from the court which, if adver e to what he conceived to be the law, could be brought up to this court for review by bill of exception. The complaint which he makes is not in such a form as to enable us to reach it.

The judgment appealed from is affirmed.

### On Application for Rehearing.

Counsel for defendant has presented on his behalf a very earnest brief which has received our most serious consideration. He feelingly comments on what he declares to have been a most serious wrong to his client committed by the District Judge in informing him that were he requested to charge the jury upon the law of self-defence he would be compelled to charge the jury that the plea of self- defence admitted the killing. He states that "by reason of this announcement he was forced to desist from requesting the judge to charge on the law of self-defence, as he had intended to do, having prepared a special charge on that subject which he had designed to have asked given; that he was obliged to do so inasmuch as he had been forewarned or warned that a charge on that subject would be supplemented by a declaration from the judge that such a plea admitted the killing, and he was not willing to admit the killing, as he, on the contrary, denied it. He says he exhibited to the judge the special charge he had prepared on that subject and informed him that he would be compelled to not request the same for the reason stated. He says he did not for the same reason claim or discuss the law of self-defence.

The District Judge in his statement of facts, appended to the bill,

says he showed counsel the opinion in the case of State vs. Watson, 36 An. 148, and counsel made no reply, but in his argument to the jury complained that he was cut off from urging the plea of self-defence, because if he did so the court would charge that that plea admitted the killing, and on this ground he disclaimed the plea of self-defence and urged only that the defendant did not kill the deceased. That as the charge itself would show, the court did not charge on the law of self-defence.

That counsel submitted fifteen special charges: No. 9 was canceled, No. 15 (the special charge on the subject of self-defence) was withdrawn, Nos. 8 and 14 were given and the others refused. That when the charge was finished the court remarked to counsel that it. had given special charges Nos. 8 and 14 and refused the others, and counsel replied he would prepare the bill of exceptions; that the court understood counsel to mean his bill of exceptions to the refusal of. his remaining eleven special charges and had no intimation that any bill of this kind was reserved until it was presented for signature. The court further said that if counsel had wanted the law of self-defence given without the statement that the plea of self-defence admits the killing, he should have asked for it, and, if not given, have excepted to its refusal. The court says it took no action except to ask the counsel whether he would urge the plea of self-defence, and on his answering " yes," the court remarked that the plea of self-defence admits the killing, and handed counsel the case in 36 An. 148.

A close examination of the statement of facts on which defendant relies, and which has been designated by him and also by the District Court and by ourselves as a " bill of exception," is only partially such if at all. Counsel declares that he reserved a bill of exceptions; the court says he did not, and that the court had no intimation of such a bill until it was presented for signature. When it was presented for signature does not appear.

In an issue between the court and counsel, whether a bill of exception was reserved or not, and, if reserved, what the exception covered, we have under our unvarying jurisprudence no alternative but to take the statement of the court.

Looking at the " statement of facts " relative to the occurrences touching the conversation between counsel and the judge, we find counsel's statement to be " the charge being in writing, it was an-

nexed to the bill as part thereof, and the prisoner reserved his bill of exception to the said charge." "The accused excepts to the charge for the reason that the same did not contain the law of self-defence."

What we have stated above constitutes really what counsel claims to have been his exception, the balance of the document being a recital as to certain circumstances connected with the course pursued by the counsel and the court.

We think that the counsel's statement that the charge being in writing, the prisoner reserved his bill to said charge, shows that if any exception was taken it was only after the charge was read, and that the objection to the charge was, as delivered, it failed to contain any reference to the law of self-defence.  There is no claim made that the court had been asked to charge on that subject and refused to do so; on the contrary, it is expressly stated that a requested charge on the subject of self-defence was *waived*. If it was waived as a matter of course there could be no exception taken to its not being included in the charge, but counsel says he was improperly forced to waive it. If he was improperly forced to waive it, then such improper forcing him to a waiver should have been itself made the subject of exception, and a bill reserved, but no objection or complaint of that kind was taken.   We find no complaint on that score, except, as is inferentially to be drawn from the recitals in regard to the real exception.

Counsel acquiesced at the time in the court's action, instead of objecting to it then, as he should.  Counsel, in his recitals of fact, says the court heard him tell the jury that he had been forced to not discuss the question of self-defence, because the court had stated to him that if he did so it would inform the jury that the plea of self-defence would admit the killing; saw him abstain from saying anything on that subject to the jury, and said not a word in disclaimer of that being the case and such being the law; that the situation, therefore, was substantially as if the judge had actually given a charge to that effect to the jury, but, if any such impression was conveyed to the jury, counsel must bear in mind that it was the result of his own statement to the jury as to the court's view on that point—the court itself would certainly have said nothing at all on the subject if not called on to do so.   We may be perfectly willing to agree with counsel that a District Judge should never permit himself to hold a conversation out of court with counsel in a case in

reference to his proposed action therein, or make any suggestion to him in respect to it, and also to fully agree with him that, if counsel should refer to such extra - judicial declarations and declare to the jury that they were controlling him in his line of defence, that the court should then and there check the counsel and force him to stand upon his own conception of his legal rights, and yet we would be powerless to grant him any relief, unless these matters were brought to us under timely objections brought before us in strict legal form. Grant that the District Judge was silent when he should have stopped counsel in his statement to the jury, how can we notice this with a view of taking action upon it without some objection and exception was taken to his course. There is no bill of exception before us covering this point even now. Counsel says he was compelled by the judge to waive his legal right of discussing his client's case from the standpoint of self-defence and of having a charge on that subject, but it is precisely in respect to this very matter that the weakness of the case is to be found. He was not compelled to pursue the course he did. When a person has a legal right, it is his privilege and his duty to insist upon its recognition and enforcement, and should this be refused, he should except and reserve a bill. He can not by reason of anything the judge had told him (unless he excepted and reserved a bill to this very statement) refrain from claiming his legal rights, and subsequently on a mere statement of facts (even though agreed by the judge as correct) complain of the inaction or non-action of the judge.

We do not think that the instrument called a bill of exception is in reality such, except in so far as it excepts to the written charge for the reason that it failed to refer to the law of self-defence. Viewed as a bill of exceptions in reference to that matter, we do not think the exception well taken, because the judge was not asked to charge on that subject and did not refuse. Counsel says on the contrary such a special charge was waived.

We are not authorized in criminal cases to pass upon the issues involved, on an "agreed statement of facts" as to occurrences which took place on the trial, made out after the occurrence had occurred and without exceptions being taken and a bill of exception reserved.

The case is before us in such shape as to make it impossible for us

to grant relief, however much we might desire to do so, without breaking down rules of practice. Hard cases have been called the quicksands of the law. They make bad law.

We are constrained to refuse a rehearing.