(56 South. 891.)

No. 19,141.

STATE v. WILLIAMS.

(Dec. 11, 1911.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§§ 737, 756*) — TRIAL— PROVINCE OF COURT AND JURY.

It is the province of the jury to determine questions of fact in a criminal case, and the trial judge cannot be required to deliver a special charge involving, or appearing to involve, a statement of facts material to the guilt or innocence of the accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1703, 1704, 1706, 1766– 1771; Dec. Dig. §§ 737, 756.*]

2. CRIMINAL LAW (§ 829*)—TRIAL—INSTRUCTIONS—INSTRUCTIONS ALREADY GIVEN.

The trial judge in a criminal case is not required to deliver special charges upon points of law clearly and sufficiently covered by the general charge.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2001; Dec. Dig. § 829.*]

3. HOMICIDE (§ 17*)—ACCIDENTAL KILLING OF THIRD PERSON.

Where one person in an attempt to kill another accidentally kills a third person, the matter to be inquired into is, Would the killing have been justifiable if he had killed the person whom he intended to kill, the unintended act, in such case, deriving its character from the intended act?

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 23; Dec. Dig. § 17.*]

4. HOMICIDE (§ 116*)—SELF-DEFENSE.

In order to sustain the plea of self-defense, the evidence should show an actual attack or hostile demonstration such as to afford reasonable ground for the belief that the subject of the attack or demonstration is in danger of losing his life or of suffering great bodily harm, and that the killing of the attacking party is the only reasonable method of averting the danger.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 158–163; Dec. Dig. § 116.*]

5. HOMICIDE (§ 151*)—EVIDENCE—BURDEN OF PROOF—JUSTIFICATION.

In a prosecution for manslaughter, the state is bound to establish the guilt of the accused beyond a reasonable doubt, but, when all the essential ingredients of the offense have been established, and a plea of self-defense is interposed, the plea admits the killing, and it is incumbent on the accused to show the circumstances of mitigation or excuse on which he relies, unless they appear from the evidence adduced by the prosecution.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 276–278; Dec. Dig. § 151.*]

6. JURY (§ 103*) — COMPETENCY — FORMATION OF OPINION—EFFECT.

The fact that a venireman has formed and expressed an opinion as to a criminal case does not disqualify him from becoming a juryman, if, on his voir dire, it appears that the opinion, so formed and expressed, will not prevent him from finding a verdict upon the basis of the evidence that may be adduced on the trial and the law as it may be given to him by the court.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 461–479; Dec. Dig. § 103.*]

Appeal from Seventh Judicial District Court, Parish of Richland; John R. McIntosh, Judge.

R. W. Williams was convicted of manslaughter, and appeals. Affirmed.

Levy & Todd, for appellant. Walter Guion, Atty. Gen., and C. J. Ellis, Dist. Atty. (G. A. Gondran, of counsel), for the State.

MONROE, J. Defendant was convicted of manslaughter and sentenced to pay a fine of $10 and the costs of the prosecution, and to suffer imprisonment at hard labor for two years. He presents his case to this court on two bills of exception (others which appear in the transcript having been abandoned), to wit:

Bill No. 1. To the refusal of the court to charge the jury specially as follows:

"If the defendant had a reasonable ground to believe from appearances that his life was then and there in imminent danger or of great bodily harm, and that he killed deceased believing that he was Chambers, who had assaulted him with a deadly weapon a short time before the homicide, and whom he believed was attacking him then and there with a deadly weapon (and if) he believed he killed deceased to save his own life, he is justified, although it developed that the deceased was not making the attack.

"(2) The burden of proof is on the state.

"(3) The presumption of innocence is with the accused through all stages of the trial.

"(4) It must be affirmatively shown by the

state that the accused was pursuing an unlawful purpose when the homicide occurred in order to convict accused, and when, instead of killing the person whom he intended to kill, he killed an innocent bystander.

"(5) When a person is pursuing a lawful purpose, and by mistake accidentally kills an innocent bystander, it is not murder nor manslaughter, but justifiable or excusable homicide."

"(Objected to, for the reasons that it would be going over the testimony, and, in so far as it does not do this, it has been fully covered in a systematic, orderly way by the original charge. All others objected to for the reason that they have been fully covered by the general charge.)

"By the Court: The first charge is refused for the reason that the court is prohibited by law to state or repeat to the jury the testimony of any witness or express an opinion of what facts have been proved or disproved. The evidence showed that the accused, Rube Williams, shot and killed Lem Hardie, believing that he was shooting at Charley Chambers, mistaking Hardie for Chambers."

[4] "The court charged that, in order to maintain a plea of self-defense, the evidence must show an actual attack or hostile demonstration to afford a reasonable ground for an accused to believe the design was to destroy his life or to do him some great bodily harm or injury, and that the killing of his assailant appeared to be the only reasonable means of escaping injury; that the right of self-defense does not depend exclusively upon the reality or imminence of the danger apprehended; and that, if an accused is mistaken as to his actual danger, he will be excusable under the law for his actions, if he honestly believes that he is in danger, induced by reasonable evidence," etc.

[3] "The court further charged that a person who shoots at another, and accidentally kills a third party, or shoots and kills one person, believing that he is shooting at another, the inquiry would be, if he had shot and killed the person he aimed at, would he have been justifiable or not; that, if he had shot A. and killed B. accidentally, he would have to be justifiable in his killing of A., in order to be excusable for the accidental killing of B., and, conversely, if the killing would have been an unlawful killing of A., it would be an unlawful killing of B., even though it be accidental. The unintended act derives its character from the intended."

"The other charges were refused because some were not sufficiently full and complete, and had been covered fully by the general charge."

[5] "The court charged that the state is required to prove all the essential ingredients of the charge beyond a reasonable doubt before a jury would be justified or authorized in rendering a verdict of conviction against an accused, and that an accused is always presumed to be innocent until his guilt is established beyond a reasonable doubt; that when the unlawful killing and all the essential ingredients of the charge have been established by the state beyond a reasonable doubt, and a plea of self-defense interposed, this plea admits the killing, and it is incumbent upon the accused to show circumstances of mitigation or excuse, unless same arises from the evidence on the part of the prosecution."

"The jury was fully charged in the general charge as to the requested charges, except wherein the same is in conflict therewith."

[1, 2] The first requested charge, whether so intended or not, appears to contain the statement in effect that Chambers had assaulted defendant with a deadly weapon a short time before, and that defendant believed Chambers was attacking him then and there with a deadly weapon, and that he was doing the killing to save his own life, the finding of which facts was exclusively within the province of the jury. Beyond that, the charge given by the judge was clear, sufficient to cover all the points presented, or intended to be presented, by the requested charges, and is fully sustained by the authorities. Const. art. 179; R. S. § 991; State v. Spencer, 45 La. Ann. 1, 12 South. 135; State v. Robertson, 111 La. 811, 35 South. 916; State v. Vines, 34 La. Ann. 1079; State v. West, 45 La. Ann. 14, 12 South. 7; State v. Salter, 48 La. Ann. 197, 19 South. 265; State v. Thomas, 127 La. 576, 53 South. 868; Bishop's Cr. Law, p. 328; State v. Allen, 111 La. 154, 35 South. 495; State v. Garic, 35 La. Ann. 970; State v. Le Blanc, 116 La. 823, 41 South. 105.

[6] Bill No. 6. To the overruling of a motion for new trial, in which it is alleged that S. R. Phillips, the foreman of the jury, had stated, shortly before the trial, "that Rube Williams had been in a good many scrapes before, and had been lucky to get out, but that they would do him up this time," and that, when the jury returned into court for instructions, "he had declared that he thought he was guilty." The motion further alleges that defendant discovered the facts thus stated after the verdict, and that they

show that said Phillips went into the jury box with a fixed opinion and a bias and prejudice against defendant.

The testimony taken on the trial of the motion shows that Phillips came into town shortly before the hour at which the court was to convene, and went to the store of a Mr. Scott, who was a friend of his, and also a connection of the defendant's, and (to quote the testimony of one witness):

"Well, he asked Mr. Scott what was going on, and he told him they were going to try Mr. Rube Williams, and he said Rube had been in a heap of trouble, and had got out mighty easy, and he thought this would about fix him."

Another witness says:

"Mr. Scott said: 'I will be up there [at the courthouse] after a while boys. They are going to try Rube Williams to-day.' Mr. Phillips remarked: 'Well, old man Rube has given a good deal of trouble, or has acted very naughty, in the parish, and has always gotten out of it, but I expect they will send him up this time.' "

Phillips says:

"Mr. Scott told me they were going to try Rube Monday morning, and we were going to try to clear him; and I remarked, 'I think you are up against a proposition this time,' and, as well as I recollect, that was all I said about the case."

Mr. Phillips further testified that on the voir dire he had stated that he had an opinion and had expressed it, and that he had also stated "that he did not think that his opinion was so fixed that it could not be changed by proper evidence." He further testified that as a matter of fact he had no feeling of prejudice against the defendant. It appears from the testimony of Williams that Scott took a very active part in his defense, and was in court, in consultation with his counsel, when witness was accepted on the jury. He was not, however, called to the stand on the hearing of the motion for new trial.

We are of opinion, as was the learned judge of the district court, that the juror was competent. State v. Hebert, 104 La.

227, 28 South. 898; State v. Kellogg, 104 La. 580, 29 South. 285; State v. Howard, 120 La. 311, 45 South. 260.

Judgment affirmed.